May I please call the case? 3-090982, people of the state of Illinois, affiliated by Thomas Obrado v. Dana Penaherrera, announced by Leroy Williams. Hello. May I please report? Opposing counsel? My name is Leroy Williams. I'm here on behalf of the defendant, Dana Penaherrera. I'm from the Office of the State Appellate Defender. After pleading guilty to unlawful possession of a controlled substance, my client was sentenced to two years probation. Part of her probation was that she submit to periodic drug tests and that she refrain from having any illicit substance in her system which was not prescribed by a physician. After submitting to a drug test, my client tested positive for opiates. The state subsequently filed a petition to revoke her probation and the circuit court granted that petition. In my brief, I raised three issues. Today I'm going to focus on issues one and three. Is there anything in this record that shows that she took the medication from the prescription? No, there is nothing in this record which shows that she actually took the prescription that she had for hydrocodone. However, that was not... So how can we assume that happened? Well, the state proceeded essentially through four stipulations. So the state had the burden to show by preponderance of the evidence that she had an illicit substance in her system. But she had an opiate in her system. Right. However, they had to show the actual mandates of her probation said that she could have a prescription as long as she didn't test positive for a substance which she did not have a prescription for. Well, but the opiate center system didn't come from the prescription. The piece of paper, they come from the drug that's prescribed, right? There was no evidence that... There was no evidence of where the opiates came from. It was the state's burden to show that the opiates in her system were opiates in her system which were not prescribed to her by a physician. The only evidence that came into court was that one, that she tested positive for an opiate. The other one was that hydrocodone and heroin would cause a person to test positive. The other one was that she had a prescription for hydrocodone at the time that she tested positive and that she procured this prescription before she had knowledge that she was supposed to take the test. Well, even if you believe that and... But her own testimony was, in essence, the only conclusion one could draw from the testimony is that she didn't take any of them. So therefore, the opiate center system did not come from the prescription she was given because she didn't take them. Your Honor, I would argue that that's not the evidence that came in. The evidence that came in, the only testimony at the hearing was from her mother. And the only evidence that came in then was that the mother said that she received a call between 1 and 2.30 p.m. from the court asking her to inform her daughter that she had to be in court the next day to submit to a test. She said that she told her daughter around 10 o'clock that evening when her daughter got home that she had to take this test. The other piece of information was that there was a boyfriend that lived at home and that the only person that she told about this was the boyfriend. But the mother did not believe that the boyfriend had, in fact, informed her. That was the only testimony that came in. Well, didn't she bring a bottle and say, look, here's my prescription? Yes. For Vicodin and Hydrocodone. And so, all right. And they said, wait, there's just two pills in here. I'll submit that that... She says, well, I left 13 at home. Well, 13 and 2 is 15, which is the amount prescribed, which means she didn't take any of it. The evidence was that she had two pills in the bottle. And 13 at home. No. The evidence was that there were two pills. First off, what we're talking about is evidence that is not even considered or should not be considered evidence. This was a colloquy that occurred between the defendant and the court prior to the state even submitting a petition to revoke. At this particular point, she had just come in and explained to the court why she had tested positive. The court then asked her, well, why did she have all of the pills with her? She simply told the court that there were 15 pills altogether, but that she had only brought two because she did not want them to be confiscated if she were, in fact, taken into custody. However, none of this information came in during the actual hearing. This goes to the third issue, which was that at this particular point, the court made a determination that she had, in fact, violated the terms of probation before the state had even filed a petition, before any evidence had come in, and then that after the hearing was actually held and both sides had, in fact, put forth these stipulations, this one witness came on, her mother, and both parties actually gave their closing arguments and rested. At that point, the court then revisited this same particular argument that it had for belief that she had, in fact, violated her probation, and then it asked a series of other questions like where were the pills at? It revisited this. Then it asked her, well, if you didn't bring the pills in, then he asked the sheriff in the court to then verify this. The sheriff made a call, and at that point, then the court proceeded to ask a variety of other questions like where she worked at, why did she have pain, why did she go to the nearest hospital, and time after time, the court was given the information, reasonable information, like she was a waitress and she didn't have health care to just immediately go to the doctor. She explained that she was in a car accident and that she broke her sternum. She informed the court that two days prior to the drug test, she was in a car and had to suddenly hit the brakes, the seat belt locked around her sternum, and she also informed the court that she had back pain and that it was aggravated the morning of when she was doing something at work. None of these things were put on by the state. These were all things that the court did as a role of not as an arbiter or a neutral arbiter, but as an advocate, and it went way beyond the pill in trying to determine if, in fact, its own beliefs as to why she had fell this particular drug test were true. And at that point, I believe that... Well, isn't this come down to a simple issue, though? It's she had to refrain from having in her body the presence of any illicit drugs prohibited by the Controlled Substance Act unless they were prescribed by a physician. In other words, in her system, drugs prescribed by a physician. Right. Okay, and I keep on coming back. There is no evidence in this record at all, is there, that the drugs that she had, in fact, in her system, because there were opiates in her system, what evidence is it that it came from the drugs that were on the prescription? Well, the... I mean, she had a prescription. Your Honor, respectfully, it was not her burden to carry. It was the state's burden to carry by a preponderance of the evidence. It was the state's burden to show. So the state comes in, and they prove that there were opiates in her system. Right, and not to make this too simplistic, but the statute that you're actually reading from, it doesn't say that she had to show that the prescription that she had, that she then, in fact, actually took something from that prescription. That is not what... I believe that the state is changing this particular argument. Like, in the last paragraph of the brief, you're saying that she did not actually show that she took a pill from the hydrocodone. Well, it wasn't her burden to start with. It was their burden to show that the opiates in her system were not prescribed by a physician, and the state utterly failed to do that. It put on no evidence whatsoever that she had taken heroin or any other kind of drug. Well, let me ask you this. Are you saying, then, if the state comes in, somebody makes a drop, and they say, gee, you've got opiates, okay? Mm-hmm. And then you just sit there and say, Your Honor, they haven't shown that I don't have a prescription for those opiates. Well, no, here... The state can't go out there and get into her medical records and go around asking doctors, hey, did you give her a prescription? Did you give her a prescription? Isn't it her burden at that point to come forward and show, well, there's a... I've got a prescription, and these are prescription drugs in my system. Well, the way that you've worded that question, then if a defendant, in fact, in that position does have a prescription, then it would seem to me that they would have to say or show the court to some degree that they have a prescription. I mean, a person can't have a prescription and not bring it forth to the court so that the court can understand that they indeed do. So to a certain degree, that burden just bothers the very nature of what is being shown is on the defendant to produce this prescription. But in this particular instance, she did. Well, exactly, but the point is, you don't get opiates in your system either by, A, holding a prescription in your hand, or, B, holding a bottle of hydrocodone in your hand. You get it from ingesting the hydrocodone, correct? And there was no evidence that she did that. And there was no evidence that she did. They had... They put on evidence that she had opiates in her system, and she put on no evidence that she took these prescription drugs. But it wasn't... It was not her burden to put forth evidence that she, in fact, used the prescription. It was her burden simply by what the statute states is to show that it was unless prescribed by a physician that she could not have an illicit substance in her system. So just even by the statute, it says that unless there is a prescription for it, then at that point, it's the state's burden. This is the state's burden. So the legislature... John, aren't you leaving out something in your statement? It said she shall refrain from having in her body, in her body, the presence of any illicit drug prohibited by the Act, okay, unless prescribed by a physician. Sure. So in her body, there were opiates. Right. Were they ones that were prescribed by a physician in her body? What evidence is there of that? The prescription that she actually had, which caused her to test positive for hydroponia. But this is not a leap of faith to go from the prescription without any evidence that she actually took it. Do we assume that she took the medicine in the bottle? But I think that if you look at it from the opposite side, then we're assuming that she used heroin or some other opiate which is an illicit substance, and you can't do that either. It's the state's burden. No, all we know is that there's proof there's opiates in her body. Right. But by the very nature... And she has a prescription. We know that. Respectfully, Your Honor, but by the very nature of the question that you pose, the facts are simply that she did test positive for an opiate. That's there. She had an opiate in her system. And the other fact that we know is that she had a prescription for it. So let me ask you this. In your argument, let's take this situation. She goes, she tests positive for opiates, and then on her way to the court, after she takes the test, then she goes and gets a prescription and walks in there and says, There you are, Your Honor, I got a prescription for that stuff. Well, then I think that that would be pretty simple to say because that would be at the time that she tested positive, she didn't have her prescription. So then she goes, there's no question here of the time frame of this. She got the prescription before she tested positive. In that particular instance, the person got the prescription after they tested positive. And I think that these are two different. But isn't implicit in this as clear what they meant was that you're taking, not that you just have a prescription, but that you're actually taking prescribed drugs, and that's the explanation for the opiates in your system? Right. But I think that in this particular instance, the evidence that came in would show there's nothing to show that she didn't. There's been no evidence put on by the state which would go to show that she did, in fact, that she did not take this, or that she procured this so that she could mask the fact that she was taking heroin. This was all the state's burden. The state could have called in the doctor. The state had all of these personnel, people that she did. There was evidence showing what hospital she went to. There was evidence showing that she left work early that day. If the state had any qualms about the fact, not believing that she, in fact, was in pain, they could have called her employers in. Her employers let her go early that day. She went to the hospital. She got this from a licensed physician. We're not talking about whether she's in pain or not. We're talking what are those opiates in her body. That's what we're talking about. But I believe that this evidence goes to show, to make the inference, that, in fact, she took a hydrocodone pain medication as opposed to just heroin. So if you look at the fact that she left her job early that day because she was in pain, then I think that will go to show that, in fact, she was in pain. And the last thing is that a physician gave this to her. There are other pain medications that could have been prescribed. And this was a valid prescription from a valid licensed physician. The state could have called all of these people in to show, to carry its burden, that, in fact, she did not do these things. And the state failed to do that. The state put on four pieces of information and rested. And it was not enough for it to carry its burden. Counsel, you have two minutes. Counsel, I'm going to correct you on a point, and maybe I'm mistaken, but this isn't a statute that we're interpreting. This is the language of the probation order that we're interpreting. Yes, it is. And if I might suggest a better argument is it's a defense for her to show she has a prescription. That's all she has to do is to show she has a prescription to defend against the language in her probation order. The probation order doesn't read, unless she consumed the substance which was lawfully prescribed by a doctor. That's the difficulty here is the language. It's the burden on your client to prove a defense that she has a prescription. I don't buy the argument that the state has to show the prescription. But what you're attempting to argue is, I think, the language says if she has a prescription, she wins, and the stipulation shows she had the prescription. I agree, yes. If you're honest with me, do you have any more questions? I'd be happy to answer them. If not, go ahead. Okay, thank you. Let me proceed. Can you address my concern? Because the language of the probation order says if she has a prescription, it seems to imply she's okay. And the state prepares that language. Well, honestly, I don't recall specifically. There's citations both by defendant and us to the statute, which is specific about what the requirements are. Okay, so there is a statute on point delineating the conditions? Correct. A stand correct? It's Section 410 probation order, and I can give you 725.7410. Okay, so let's read the language of that order. Shall refrain from having in his body the presence of any illicit drug prohibited by the Cannabis Control Act or the Controlled Substances Act. And we know she didn't. Correct. And then here's the unless. Unless prescribed by a physician. Why isn't that enough? Because you have to show that, as Justice Carter pointed out, you have to show that the opiates that were in their system were the ones prescribed by the physician. Where in this language do we get that? I think that's the plain language of the statute. Shall refrain from having in his body the presence of any illicit drug unless prescribed by a physician. Okay, so you're saying by implication, unless it was consumed. Correct, because otherwise all the defendant has to do is show a prescription and he can take as much heroin as he wants. And I don't think that's the statutory or the legislature's intent. And that's one thing. If you are going to be looking at interpretation of a statute, you have to look at what the intent of the legislature was. And the legislature wouldn't have intended to give carte blanche to somebody to get a prescription so they can take as much illegal drugs as they want just by getting a prescription for something that is legal or legally prescribed. So I think that that's the... Okay. And I think the other points are well taken. There's absolutely nothing in the record indicating that she took hydrocodone. In fact, as pointed out in the defendant's brief in pages 111 and 112 of the record, the judge points out there are only two pills for the other 13, and counsel says, well, the other 13 are at home because she was afraid they were going to be confiscated. Thirteen plus two is 15, which is what the prescription was for. But that was the counsel's statement. That is the counsel's statement, but there is still no other testimony whatsoever that she actually took the hydrocodone. And I would suggest that, you know, he's talking about Burton. There is no specific case I could find that talks about Burton other than Hood in which the defendant said, I can't perform the test, physically can't perform the test. And the appellate court said, well, the state doesn't have to show you can't physically perform. It's the defendant's burden to present that in his defense. Well, ultimately here the burden is on the state. This is not beyond a reasonable doubt anymore, but by a preponderance of the evidence. So it's just like a civil case. So when the prior fact is free to believe or disbelieve, testimony. Fair? Oh, absolutely. On that point, it's manifest way that the evidence is the standard, I believe. And the trial judge was free to consider her explanation and the other testimonial witnesses and come to his conclusion that he didn't believe her. It seems rather coincidental that you would just happen to get a description for him. The very thing that you need to pass a test. So I would think that the judge was well within his rights to make that determination. I believe the other points are covered in our brief, so if there's no other- I'm curious as to what your take is on the judge directing the parties to give him more information and continuing the hearing. Well, my take is that he wanted to give the defendant as fair a chance as possible, that clearly that there was some doubt in his mind. And that really goes to the prejudice question in the third argument of the defendant. And he was saying that, oh, the judge was clearly prejudiced because in the prior hearing, he was talking about the twilight zone and this was such a bizarre incident. I think that it shows that the judge was trying to be as fair as possible to the defendant, to get additional information to show that what she was saying was true. And at the end of the day, it didn't appear that the judge believed her. If there are no further questions, then we respectfully request- Does he or she have to decide the case based on the evidence the parties chose to present? Well, the evidence I would- You said obviously the judge had doubted the hearing. Well, he was trying to be as fair as possible to the defendant. I think that the evidence was overwhelming at that point, that she hadn't taken any hydrocodone, that anything that she had done was designed to overcome the presumption that she had taken- well, overcome the fact that she had taken something that produced an opiate in her system. So I think that's simply a matter of trying to be- giving the defendant a fairer, more chance to present evidence, not because the state had met its burden. And how would those employment records that he requested do that? It's almost like the judge was looking for a reason not to believe the testimony that she was at work. That- I don't know exactly what would be in that judge's mind at that point. I don't think he fully explained, articulated why he wanted those. Thank you, counsel. Thank you, your honors. Your honor, opposing counsel raised a prior case cited in this degree, which was a case in which counsel cited it for the fact that Penahir should have some sort of burden in coming forth assuring that she had in fact taken pills from the prescription. But in that particular case that opposing counsel relies on, the only thing that happened in that case was that the defendant refused to take the test. And so under those particular guidelines, the court found that it did not have to find that the state did not carry its burden. And that's completely different from what happened here today. Or what happened when Penahir took her test. She actually did take the test, and she followed all of the mandates of her probation. And under those particular guidelines, I will submit that the state did not carry its burden here by actually showing that the illicit substance in her system was not one which was prescribed by a physician. And the last point that I wanted to make was that the questions that the court asked after the actual hearing ended, they were all geared towards showing that the defendant was in fact lying about the reasons for, or that showing that the opiates in her system were in fact illicit. None of the questions seemed to slant towards maybe giving her the benefit of the information that had come forward at trial. To me it seems like the court was not a neutral arbiter at all, but was in fact an advocate for the state. So I think that under this particular set of facts, I believe that the state filled the carry's burden. And if you should find otherwise, alternatively we would ask that you find that Penahir's due process rights were violated. And remand is a matter for a new hearing before a new judge. So if you have no further questions. Thank you, counsel. Thank you. Thank you. The court will take a recess for lunch and for a new panel after lunch. And we'll take this case under advisement and render a decision with dispatch.